# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

DEBORAH HOWELL,

                Plaintiff,

v.

MILWAUKEE RADIOLOGISTS, LTD., S.C.,

                Defendant.

Case No. 22-CV-473-JPS

**ORDER**

### 1. INTRODUCTION

On December 5, 2022, Plaintiff Deborah Howell ("Plaintiff") filed a complaint alleging that her former employer, Defendant Milwaukee Radiologists, Ltd., S.C. ("Defendant") terminated her employment in violation of both the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the Wisconsin Fair Employment Act ("WFEA"), Wis. Stat. § 111.321 *et seq.* ECF No. 1. Now before the Court are Defendant's motion for sanctions, ECF No. 14, and Defendant's motion for summary judgment, ECF No. 20. For the reasons discussed herein, the Court will grant the motion for summary judgment and will deny the motion for sanctions.

### 2. FACTUAL BACKGROUND[1]

Plaintiff began her employment with Defendant on June 26, 2007. She began as a Management Assistant and was promoted to Practice Manager during her second year of employment. She was never disciplined

---

[1]The following recitation of facts is drawn from the parties' agreed upon statement of facts, ECF No. 23, with minor, non-substantive edits.

during her tenure, and she was qualified for her position at the time of her termination.[2] Her employment was at-will.

In the spring of 2021, Plaintiff informed Defendant that she planned to retire on or about December 31, 2021. She agreed to help find and train her replacement. Following a several months-long search, involving solicitation of candidates and interviews, Defendant extended an offer to Colleen Miller ("Miller") to replace Plaintiff as Practice Manager. Miller began her employment with Defendant on September 1, 2021, and Plaintiff trained her.

On September 21, 2021, Plaintiff emailed one of Defendant's physicians, Dr. Uma Suriyanarayanan ("Suriyanarayanan"),[3] inquiring about Defendant's Board's position regarding how Plaintiff's accrued PTO/vacation time would be paid out. Plaintiff provided two options for the Board to consider: (1) she would work through the end of December 2021 if Defendant paid her for her thirty-five days of unused, accrued PTO/vacation time; or (2) she would use her accrued PTO/vacation time prior to her departure, and her last day with Defendant would be November 12, 2021. Suriyanarayanan did not respond to the inquiry.

---

[2] In its statement of disputed facts, Defendant asserts that starting in June of 2021 and continuing to the time of her termination, Plaintiff had become "hostile, irrational and inappropriate" at work. ECF No. 24 at 1. Defendant alleges further that Plaintiff "refused to allow" her replacement, Miller, to "modernize procedures," and that this was a "source of frustration." *Id*. Defendant claims that Plaintiff's behavior was so bad that Miller informed Defendant that she was not going to continue her employment there. *Id*.

[3] Suriyanarayanan is additionally one of Defendant's partners and its president. ECF No. 19-2 at 6–7. She also served as Plaintiff's direct supervisor from June of 2021 onward. *Id.* at 8.

Page 2 of 14
Case 2:22-cv-00473-JPS   Filed 02/28/23   Page 2 of 14   Document 33

Several days later, on September 24, 2021, Defendant terminated Plaintiff's employment. Plaintiff was over the age of 40 at the time of her termination. Plaintiff's replacement, Miller, was also over the age of 40 at that time.[4] Defendant compensated Plaintiff for the entire month of September 2021 and for thirty-five days of accrued PTO/vacation time. Defendant also offered to pay Plaintiff's COBRA's insurance premium through the end of December 2021 if she elected it. Defendant did not contest Plaintiff's claim for unemployment benefits.

3.     **MOTION FOR SUMMARY JUDGMENT**

    **3.1    Standard**

Federal Rule of Civil Procedure 56 provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The court construes all facts and reasonable inferences in the light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016). "At summary judgment a court may not assess the credibility of witnesses, choose between competing inferences or balance the relative weight of conflicting evidence; it must view all the

---

[4]Miller is "22 years younger" than Plaintiff. ECF No. 32 at 2. Nevertheless, she too was a member of the same protected class as Plaintiff (over 40) at the time of Plaintiff's termination. *See* ECF No. 29-1 at 8 (asserting that Miller is over the age of 40).

evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party." *Abdullahi v. City of Madison*, 423 F.3d 763, 769 (7th Cir. 2005).

Ultimately, "the non-movant need not match the movant witness for witness, nor persuade the court that her case is convincing, she need only come forward with appropriate evidence demonstrating that there is a pending dispute of material fact." *Waldridge v. Am. Hoeschst Corp.*, 24 F.3d 918, 921 (7th Cir. 1994). But simply "denying a fact that has evidentiary support 'does not transform it into a disputed issue of fact sufficient to survive a motion for summary judgment.'" *Uncommon v. Spigen, Inc.*, 305 F. Supp. 3d 825, 838 (N.D. Ill. 2018) (internal quotation omitted).

**3.2 Analysis**

**3.2.1 ADEA[5]**

"The ADEA protects workers who are at least 40 years of age from age-based employment discrimination and prohibits employers from retaliating against an employee for opposing such discrimination." *Sinha v. Bradley Univ.*, 995 F.3d 568, 573 (7th Cir. 2021) (citing 29 U.S.C. §§ 631(a), 623(d)). "A plaintiff suing under the ADEA 'must prove, by a preponderance of the evidence, that age was the "but-for" cause of the challenged adverse employment action.'" *Id*. (internal citation omitted).[6]

---

[5]Plaintiff brings a disparate treatment claim, rather than a disparate impact claim. "Claims of disparate treatment may be distinguished from claims that stress 'disparate impact' in that the 'latter involve employment practices that are facially neutral in their treatment of different groups but that . . . fall more harshly on one group than another and cannot be justified by business necessity." *Int'l Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977).

[6]"In this respect, the ADEA is narrower than Title VII of the Civil Rights Act of 1964, as Title VII also protects against mixed-motive discrimination." *Carson v. Lake County*, 865 F.3d 526, 532 (7th Cir. 2017).

The ADEA plaintiff may "survive summary judgment by presenting sufficient evidence 'to create a triable issue' on whether the decisionmaker had a discriminatory motivation for the adverse employment action." *Id.* (internal citation omitted).

"An ADEA plaintiff may proceed by introducing direct or circumstantial evidence that her employer took an adverse action against her because of her age." *Carson v. Lake County*, 865 F.3d 526, 532–33 (7th Cir. 2017). "Alternatively, a plaintiff may proceed through the burden-shifting framework adapted from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 [] (1973)." *Id*. at 533. "Under the burden-shifting approach, the plaintiff must come forward with evidence showing that '(1) she is a member of a protected class, (2) she was meeting the defendant's legitimate expectations, (3) she suffered an adverse employment action, and (4) similarly situated employees who were not members of her protected class were treated more favorably.'" *Id*. (internal citation omitted). "If the plaintiff has established this prima facie case, the burden shifts 'to the defendant to "articulate a legitimate, nondiscriminatory reason for the adverse employment action, at which point the burden shifts back to the plaintiff to submit evidence that the employer's explanation is pretextual."'" *Id*. (internal citation omitted).

The parties do not dispute that Plaintiff was a member of a protected class and that she suffered an adverse employment action, because she was above the age of 40 and was terminated. ECF No. 21 at 3. They do dispute, however, whether she was meeting Defendant's legitimate expectations and whether similarly situated employees who were not members of the protected class were treated more favorably.

As to whether Plaintiff was meeting her employer's legitimate expectations, Defendant claims that element is not met because Plaintiff was "hostile and unpleasant" at work and "refus[ed] to allow her replacement . . . to modernize procedures." ECF No. 21 at 5. In response, Plaintiff argues that she had an "impeccable record during her fourteen [] year tenure." ECF No. 26 at 6.[7]

The record demonstrates the following. Suriyanarayanan, Plaintiff's direct supervisor from June of 2021 onward, swore by affidavit that Plaintiff, beginning in June of 2021,[8] became "hostile, irrational and inappropriate" and that she later "refused to allow" Miller to modernize workplace procedures. ECF No. 16 at 1; ECF No. 19-2 at 8. Suriyanarayanan attests that Miller, after working with Plaintiff for several weeks, advised Suriyanarayanan that she "was going to leave MRL because Plaintiff was so hostile and unpleasant." ECF No. 16 at 2.

Suriyanarayanan's deposition testimony presents a somewhat more nuanced picture. It demonstrates that she did not have any personal

---

[7] No citation to the record is provided in support of this assertion. The same assertion is made in Plaintiff's Disputed Findings of Fact, and there too it lacks a citation to the record. *See* ECF No. 28 at 1.

[8] It was in June of 2021 that Plaintiff's previous supervisor, a Mr. Russell Lein ("Lein"), "left the organization." ECF No. 19-2 at 8; ECF No. 29-1 at 10. Suriyanarayanan testified that Plaintiff was "pretty upset about Russ leaving." ECF No. 19-2 at 9. She stated further that Lein had "become part of another organization that was in competition with" Defendant, and the record indicates that Defendant speculated that Plaintiff intended to go work for Lein instead. *See id*. at 17; *see also* ECF No. 29-1 at 10 (asserting that Plaintiff had told Miller that she was "going to work as an independent contractor for Russ Lein and make more money"). It can reasonably be inferred that Plaintiff's shift in behavior around June of 2021 may have been attributable, at least in part, to the departure of Lein from the workplace. *See* ECF No. 29-1 at 8 ("Plaintiff had become increasingly hostile after Russ Lein was terminated . . . .").

Page 6 of 14
Case 2:22-cv-00473-JPS   Filed 02/28/23   Page 6 of 14   Document 33

complaints about Plaintiff and her performance, but rather relied on others' assessments of Plaintiff. In response to the question, "At any time during 2021, did you have concerns about Ms. Howell's performance," Suriyanarayanan responded: "To be honest, I didn't know the office work as much." ECF No. 19-2 at 9. She stated that "[e]very now and then" she would get "radiologists say[ing] that [Plaintiff] was being difficult to work with in the office" and complaints about Plaintiff's "paperwork," but that she did not remember which radiologists specifically complained. *Id*. She did not direct those radiologists to submit a complaint in writing because it was "not something that was serious enough" to do so. *Id*. Suriyanarayanan additionally agreed that for the most part, her "working relationship" with Plaintiff was friendly, and that she would characterize Plaintiff as a "professional person." *Id*. at 12. Overall, Suriyanarayanan confirmed that Plaintiff "met the employer's expectations." *Id*. at 17.

Suriyanarayanan went on to testify, however, that Plaintiff was terminated at least in part because Miller found it "impossible . . . to work in the same place as" Plaintiff and "would leave" if she had to continue to work with Plaintiff. *Id.* at 13, 14. Suriyanarayanan felt that this was "an organizational threat." *Id.* at 17. Suriyanarayanan testified that Miller told her that Plaintiff had made several disrespectful comments towards several doctors and that Plaintiff had "doubted [Miller] had a college degree or something like that." *Id*. at 13. She further testified that she "honestly [didn't] know [Plaintiff's] age" and that Plaintiff's age never came up during Suriyanarayanan's discussions about Plaintiff with the Board. *Id*. at 13, 16.

Page 7 of 14
Case 2:22-cv-00473-JPS   Filed 02/28/23   Page 7 of 14   Document 33

Miller testified that she complained to Suriyanarayanan about Plaintiff. ECF No. 19-3 at 12.[9] Specifically, Miller alleged that Plaintiff had "disparaging remarks for all the doctors," calling them "fucking greedy assholes" and "bitches" and that Plaintiff would brag about how she had "45 years" of experience on Miller. *Id*. Miller said that Plaintiff "constantly told [her] that she d[idn't] have enough time to teach the 45 years of experience" to Miller and erroneously asserted that Miller "didn't have a college degree." *Id*. at 15–16. Miller testified that she got the impression that Plaintiff simply "d[id] not like MRL doctors" and that Plaintiff was "really mean" and a "bully." *Id*. at 13. She also stated that Plaintiff was late to train Miller "by 45 minutes" on Miller's first day, and that it immediately didn't give her a "great impression" and came across as "very unprofessional." *Id*. She described her training from Plaintiff as being deficient and a waste of both her own and Defendant's time. *Id*. at 13–14. Miller acknowledged that Plaintiff was "working on training material," but testified that it was never actually made available to her. *Id.* at 14. Miller additionally testified that she never explicitly "threatened to quit" because of Plaintiff, but that she did inform Suriyanarayanan that she could not "withstand this anymore." *Id*. She did not recall ever having suggested to Plaintiff that procedures in the workplace needed to be modernized. *Id*. Ultimately, Miller was not "surprised" that Plaintiff was fired. *Id*. at 15.

Similarly, Defendant's responses to requests for admissions, ECF No. 29-1, provide that "Plaintiff was difficult to work with," was "extremely

---

[9] Miller testified that she also complained about another employee, Peter Nord, but that Nord remains employed by Defendant. ECF No. 19-3 at 12. The record does not appear to provide Nord's age, so this comparison is essentially useless to the Court.

change resistant," and exhibited "toxic and irrational behavior" in the workplace. It describes further that she had become "increasingly hostile" and "more vocal in expressing her discontent." *Id.* at 8. Defendant's response to Interrogatory No. 2 similarly stated that Plaintiff "complained frequently" about Defendant's physicians, believed they "did not deserve the money they were making," referred to one of them as a "bitch," and accused Miller of lying "about having a college degree." *Id.* at 10.

      The record demonstrates that there is no genuine dispute of material fact as to this element and that, even drawing all reasonable inferences in Plaintiff's favor, no reasonable jury could find this element of Plaintiff's prima facie case met. The record overwhelmingly demonstrates that towards the end of her employment, Plaintiff made inappropriate comments regarding others in the workplace and made her replacement feel uncomfortable. Plaintiff points to no evidence rebutting those conclusions.[10] There exists no evidence wherein Plaintiff genuinely disputes those allegations. It is true that Suriyanarayanan described Plaintiff as "professional" and "meet[ing] expectations," but Plaintiff's isolated focus on those comments ignores the remainder of Suriyanarayanan's testimony—for example, those portions wherein she described that she

---

[10]Plaintiff writes in her briefing that she "denies that she acted inappropriately" but provides no citation for this assertion. ECF No. 26 at 8. An unsupported denial in the briefing without reference to actual evidence in the record does not transform a factual disagreement into a genuine one. Simply "denying a fact that has evidentiary support 'does not transform it into a disputed issue of fact sufficient to survive a motion for summary judgment.'" *Uncommon*, 305 F. Supp. 3d at 838 (internal quotation omitted). Similarly, Plaintiff's declaration, ECF No. 27, asserts that she was "an excellent employee," but does not actually deny Defendant's allegations that people complained about her in the workplace.

received complaints about Plaintiff from multiple physicians and from Miller. *See generally* ECF No. 19-2. It also ignores the fact that Suriyanarayanan was not regularly exposed to Plaintiff in the workplace to the extent that Miller was. And Plaintiff's assertion that she had an "impeccable record during her fourteen (14) year tenure" is ultimately immaterial. *See* ECF No. 26 at 6. The fact that Plaintiff was never formally disciplined is not dispositive.[11]

Even if the Court were to conclude that a reasonable jury could find that Plaintiff met her employer's legitimate expectations, Plaintiff's ADEA claim would still fail. "To survive a summary judgment motion on age . . . discrimination claims under the ADEA," a plaintiff must present some evidence—whether direct or indirect—"of discriminatory intent." *Naik v. Boehringer Ingelheim Pharms.*, 627 F.3d 596, 599 (7th Cir. 2010). Plaintiff did not do so. She points to no evidence in the record indicating that those responsible for her termination were even aware of her age, let alone that they relied on it in terminating her. To the contrary, the record demonstrates that the individual selected to replace Plaintiff—Miller—was also a member of the protected class (over the age of 40). To suggest therefore that Defendant terminated Plaintiff because of, and solely because of, her age defies basic common sense.

Moreover, the record overwhelmingly demonstrates Defendant's "legitimate, nondiscriminatory reason for" Plaintiff's termination.

---

[11]Plaintiff cites *Curry v. Menard, Inc.*, 270 F.3d 473, 477 (7th Cir. 2001) for the proposition that it "makes little sense . . . to discuss whether [Plaintiff] was meeting her employer's reasonable expectations" where "the issue is whether the plaintiff was singled out for discipline based on a prohibited factor." But unlike in *Curry*, there exists here no evidence whatsoever that Plaintiff "was singled out for discipline based on a prohibited factor." *Id*.

*McDonnell Douglas Corp.*, 411 U.S. at 533. The record shows that Defendant was faced with a situation wherein it felt the need to decide whether to keep Plaintiff or prioritize its new hire, Miller. While Miller never explicitly threatened to quit, the record demonstrates that she essentially conveyed that message in other words—she informed Suriyanarayanan that Plaintiff's behavior was so toxic that she couldn't "withstand" it anymore. ECF No. 19-3 at 14. To conclude otherwise, again, defies common sense. Plaintiff points to no evidence, nor can the Court find any, disputing these circumstances. And based on the complaints that had circulated regarding Plaintiff's attitude, Defendant's opted to prioritize Miller. Nothing in the record demonstrates that that decision had anything to do with age. Plaintiff has not shown that that articulated reason for her termination was pretextual.[12] For these reasons, the Court will grant Defendant's motion for summary judgment as to Plaintiff's ADEA claim.

### 3.2.2 WFEA

Defendant additionally moves for summary judgment on Plaintiff's WFEA claim. The WFEA prohibits employment discrimination based on age, among other characteristics. Wis. Stat. §§ 111.321 and 111.322. "The WFEA does not establish a specific procedure by which a complainant must prove a claim of discrimination; however, this court will look to federal employment discrimination decisions for guidance in interpreting state fair employment law . . . ." *Puetz Motor Sales, Inc. v. Labor & Indus. Review Com.*,

---

[12]"An inquiry into pretext requires that we evaluate the *honesty* of the employer's explanation, rather than its validity or reasonableness." *Hill v. Tangherlini*, 724 F.3d 965, 968 (7th Cir. 2013) (emphasis added). Nothing in the record suggests that Defendant used the complaints made about Plaintiff "as a mask to hide unlawful discrimination." *Id*.

126 Wis. 2d 168, 172 (Wis. 1985). The Court is accordingly prompted to look to the ADEA and *McDonnell Douglas Corp*. *Id*. For the reasons already noted above as to Plaintiff's federal age discrimination claim, Plaintiff's state age discrimination claim similarly fails. The Court will accordingly grant summary judgment for Defendant on Plaintiff's WFEA claim.

### 4. MOTION FOR SANCTIONS

#### 4.1 Standard

"The decision to grant or deny a motion for Rule 11 sanctions is within the sound judgment of the district court . . . ." *Cooney v. Casady*, 735 F.3d 514, 523 (7th Cir. 2013). Rule 11 provides that "[b]y presenting to the court a pleading . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" the pleading is "not being presented for any improper purpose," that "the claims . . . are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law," and that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . ." Fed. R. Civ. P. 11. The rule further provides that a motion for sanctions "must not be filed or be presented to the court if the challenged paper, claim, [or] contention . . . is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." *Id*.

"[F]or Rule 11 purposes a frivolous argument is simply one that is 'baseless or made without a reasonable and competent inquiry[.]'" *Berwick Grain Co. v. Ill. Dep't of Agric.*, 217 F.3d 502, 504 (7th Cir. 2000) (internal citation omitted). "The very point of Rule 11 is to lend incentive for litigants

'to stop, think and investigate more carefully before serving and filing papers[.]'" *Id.* at 505 (internal citation omitted). The Rule is intended to be limited to significant violations, and the "mere failure of a complaint to withstand a motion for summary judgment . . . should not be thought to establish a violation." *See* Wagstaffe Prac. Guide: Fed Civil Proc. Before Trial § 49.4; *Klein v. Autek Corp.*, No. 01-5751, 2004 U.S. Dist. LEXIS 29013, at *32–33 (D.N.J., June 30, 2004) ("[T]he imposition of Rule 11 sanctions is reserved for only exceptional circumstances in which the claim or motion is patently unmeritorious or frivolous.") (internal citation omitted).

### 4.2 Analysis

Defendant alleges that Plaintiff and her counsel violated Fed. R. Civ. P. 11 by filing a frivolous complaint that is unsupported by "a single evidentiary fact." ECF No. 15 at 2. Defendant alleges that it is "clear from the facts that Plaintiff was let go for reasons that had nothing to do with her age." *Id*. In response, Plaintiff argues that Defendant's motion falls outside the scope of a proper Rule 11 motion by "attacking the substantive legal and factual basis" of Plaintiff's claims, representing something more akin to a "Rule 12(b) or Rule 56" motion. ECF No. 18 at 6.

As required, Defendant served the motion for sanctions and the memorandum in support thereof on Plaintiff prior to filing them with the Court. ECF No. 15 at 4; ECF No. 18 at 2. And to conclude that Plaintiff's case was not a strong one would be an understatement. But it is not apparent to the Court that Plaintiff's case was brought with malicious or improper intentions. The Court cannot confidently conclude that this is one of the exceptional, egregious cases in which Rule 11 sanctions should be imposed. Accordingly, the Court will not exercise its discretion in this case to impose Rule 11 sanctions.

## 5. CONCLUSION

For the reasons stated herein, the Court will grant summary judgment for Defendant on both Plaintiff's ADEA and WFEA claims, but will deny Defendant's motion for Rule 11 sanctions.

Accordingly,

**IT IS ORDERED** that Defendant's motion for sanctions, ECF No. 14, be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that Defendant's motion for summary judgment, ECF No. 20, be and the same is hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 28th day of February, 2023.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge